O’NIELL, C. J.
 

 This is a- suit to remove from office the parties claiming to be the mayor and aldermen of the city of Metairie Ridge, by declaring that- the so-called city is not legally incorporated. The action is brought under the provisions of section 2593 of the Revised Statutes, authorizing such a suit to be brought in the name of the state, by the district attorney, or a district attor-. ney pro tempore, “when any association or number of persons shall act within this state as a corporation without being duly incorporated.” The district court decided that the municipality was not legally incorporated, and the defendants have appealed from the decision.
 

 Some time between the 11th of April and the 15th of June, 1927, a petition signed by 649 individuals, asking that the hamlet of Metairie Ridge, in Jefferson parish, should be incorporated as a city, was presented to Governor Simpson, and, on the 15th of June,-1927, the Governor issued a proclamation declaring the hamlet incorporated as “the village of Metairie Ridge,” and fixing the metes and bounds as set forth in the petition. The signers of the petition styled themselves “duly qualified electors and citizens in and for the hamlet of Metairie Ridge, in the parish of Jefferson, and representing two-thirds of the qualified electors in and for said hamlet, and residents of the area described” in the petition. The area was described by a survey of the courses and distances, and a plat of the survey annexed to the petition. There was also annexed to the petition a list of the qualified electors in the proposed city of Metairie Ridge, taken from the registration rolls. Each name on the typewritten list had its serial number before it, from 1 to 1067, showing at a glance that there were 1067 names on the list, and at the end was a tabulated deduction of 67 names, viz. 26 errors, 38 names of persons residing outside of the bounds of the survey, and 3 names that
 
 *459
 
 were duplicated on the list, thus showing that there were 1,000 qualified electors in the area sought to he incorporated. The petition, therefore, with the list of qualified electors annexed to it by the petitioners themselves, showed on its face that, even if everyone of the petitioners was in fact a qualified elector residing within the territory described in the petition, they did not constitute two-thirds of the electors residing in the territory.
 

 On the 9th of July, 1927, a petition for a reclassification of the village as a city was presented to the Governor, signed by the mayor and board of aldermen whom the Governor had appointed, and on the 13th of that month the Governor issued a proclamation declaring the village of Metairie Ridge to be reclassified as the city of Metairie Ridge.
 

 The cause of action set forth in the petition in this case was, not only that the petition to the Governor was not signed by two-thirds of the electors of the unincorporated hamlet, as required by the eleventh section of the Act 136 of 1898, p. 227, but that the petition was defective, in that it did not state the number of inhabitants of the hamlet, and also in that the petitioners asked for the incorporation of a city, instead of a village.
 

 The eleventh section of the Act 136 of 1898, which is the only authority in- law for the Governor to create a municipal corporation, provides:.
 

 “That whenever a petition, signed by two-thirds of the electors of any hamlet or unincorporated village, shall be presented to the Governor, setting forth the metes and bounds of their hamlet or village, stating the' number of inhabitants therein, and praying incorporation, he shall inquire into the facts. If he finds the petition sufficient and sufficiently signed, and it be shown to his satisfaction that it has been published in full for three weeks in some newspaper of the proposed municipality, if there be one, and if not, by posting in at least three conspicuous places in the hamlet or village, and that the place contains at least two hundred and fifty inhabitants, he shall, by proclamation, declare the village incorporated, defining its limits and boundaries, and fixing its name as ‘the village of -.’ Such proclamation shall be filed in the office of the Secretary of State, and remain a record thereof.”
 

 The contention of the appellants — which was first urged by a plea to the jurisdiction of the court and an exception of no cause or right of action, which pleas were overruled— is that the Governor’s finding that the petition was “sufficiently signed” was not subject to judicial investigation. It is not denied that the petition on which the Governor acted was not “signed by two-thirds of the electors of the hamlet or unincorporated village.” In fact, the admission was made during the progress of the trial, after a number of witnesses had been examined, “that, if all of the remainder of the qualified electors residing within the area sought to be incorporated were produced and examined herein, such evidence, together with the testimony heretofore adduced herein, would show that the petition to the Governor of Louisiana for incorporation, when delivered to the Governor, and at all times, was between 50 and 60 names short of two-thirds of all the qualified electors residing within the area sought to be incorporated.”
 

 If a proclamation of the Governor purporting to create a municipal corporation, under authority of' the eleventh section of the Act 136 of 1898, were immune from judicial investigation, that part of section 2593 of the Revised Statutes, which authorizes such a suit as this “when any association ox-number of persons shall act within this state as a corporation without being duly incorporated,” would be not applicable to municipal corporations; for it cannot be imagined that any association or number. of persons
 
 *461
 
 would pretend to represent a municipal corporation without the semblance of an incorporation. The place which this provision has in the law — in a statute providing for suits to remove persons usurping or intruding into or unlawfully holding public office —shows beyond all doubt that the pi-ovision is applicable to municipal corporations, and the fact has been recognized by this court in all of its decisions on the subject since the statute was enacted as Act 156 of 1868, p. 199. The same provision for such a suit, “when any association or number of persons shall act within this state as a corporation without being duly incorporated,” is retained in the Act 102 of 1928, p. 118, amending and re-enacting sections 2593, 2594, and 2597 of the Revised Statutes. The act of 192S was enacted after this suit arose, but the retention of the provisions for suits to remove from office those who pretend to represent a corporation which is not “duly incorporated” shows that these provisions of the law remained inf force as well after the enactment of the Act 136 of 1898 as when they were first enacted, in 1868.
 

 It is conceded by the appellants that the creating of municipal corporations is— and is universally acknowledged to be— strictly a legislative function. No department of the government except the Legislature can create a municipal corporation. The Legislature may, by a general law, as it did by the eleventh section of the Act 136 of 1898, prescribe rules and regulations for the creation of municipal corporations, and may confer upon some designated tribunal, board, or other agency the authority to ascertain and determine that the prescribed rules and regulations are complied with. See McQuillin, Municipal Corporations, vol. 1, § 136. But the Legislature cannot, without violating the maxim “delegatus non potest delegare,” delegate to a designated tribunal or board or other agency the authority to create municipal corporations, whenever and where-ever such tribunal or board or agency may deem'proper, or according to whatever conditions such tribunal or board or agency may see fit to require or dispense with. On that subject'the attorneys on each side of the case quote 43 O. J. pp. 77-79, § 17, viz.:.
 

 “In the United States, only an act of the Legislature can create a municipality. Congress has power to incorporate municipalities in the District of Columbia and any territory of the United States; but the power of the Legislature of an organized territory to create municipal corporations within its limits depends upon whether such power-has been delegated to it by the Organic Act. * * * However, in a majority of the states, the creation of a municipal corporation within the territorial limits of a state is within the power of the Legislature of the state; and, subject only to such constitutional limitations and' restraints, if any, on the exercise of the power as may exist, the power of the Legislature in this respect is absolute, plenary, and exclusive, to be exercised according to its judgment, will, and discretion,
 
 no other body, officer, or person having authority to< incorporate a municipality imthin the borders of the state, except when and as empowered by law; and then it is not the ministerial acts of the officer or court, but the sovereign will expressed in a solemn act of legislation, that speaks the municipal microcosm into being and gives it Ufe and power.”
 
 (The italics are ours.)
 

 It is plain, therefore, that the fact that the Governor happens to be the agency selected by the Legislature, in the eleventh section of the Act 136 of 1898, to see that the rules and regulations prescribed by the Legislature for incorporating a municipality are complied with in each instance, does not make his finding that the prescribed rules and regulations are complied with in any given case an executive function; for the Legislature might
 
 *463
 
 have selected any other officer, or any appropriate tribunal or board, to perform that function.
 

 Having in mind the fundamental propositions which we have stated — and as to which there appears to be no dispute — the question to be decided is simply a question of interpretation of the language of the eleventh section of the Act 136 of 1898. The relator contends that the Governor has no authority or jurisdiction to examine into the qualifications of the signers of the petition, or to ascertain or determine anything, unless and until a petition signed by two-thirds of the electors of the hamlet or unincorporated village is presented to him, as the statute declares. The appellants contend that the subsequent declaration in the statute — “if he find the petition sufficient and sufficiently signed” — means that the Governor may dispense with the requirement of a petition signed by two-thirds of the electors of the hamlet, merely by declaring in his proclamation that such a petition was presented to him. The relator contends — and cites authority from other jurisdictions in support of the ai’gument — that the statute would be unconstitutional if it should be construed to mean that the Governor may dispense with this condition imposed by the Legislature for creating a municipal corporation, and perform the legislative function himself, by creating a corporation under any condition that he may see fit to require. It is not necessary to decide whether the - statute would be unconstitutional, if given the construction which the appellants contend for. To give it that construction would be the same as to say that the Legislature, while requiring, as a condition on which the Governor might inquire into the matter, that a petition signed by two-thirds of the electors of the hamlet should first be presented to him, left it to him to say whether he would require that such a petition should first be presented. Why should the Legislature impose such a condition or restraint upon the Governor’s authority in the premises, unless it was intended to be effective?
 

 The appellants cite and rely upon the ruling in the case of State ex rel. Marrero, District Attorney, v. Ehret et al., .135 La. 6-13, 65 So. 871. The relator maintains that the decision cited is not appropriate here, because, in the case cited, the number of persons who signed the petition which was presented to the Governor, and on which he acted, exceeded two-thirds of the number of qualified electors of the hamlet, and all that the Governor had to do in that respect was to ascertain and determine that a sufficient number of the signers of the petition to constitute two-thirds of the qualified electors residing in the hamlet were in fact qualified electors residing in the hamlet. Relator contends that, if that is not a sufficient difference between the Ehret Case and this case to distinguish them, the Ehret Case should be overruled, because its doctrine is not sustained by the decisions cited in the opinion rendered in that case. Our opinion is that the difference that is pointed out, between the Ehret Case and this case, makes it unnecessary now either to affirm or overrule that decision.
 

 The point on which we rest our decision in this case is that the petition which was presented to the Governor, together with the certified list of all of the qualified electors residing in the hamlet, submitted by the petitioners themselves, showed upon its face the fact — which is admitted — that the petition was not signed by two-thirds of the electors residing in the hamlet.
 

 The fact that the proclamation declaring the village of Metairie Ridge incorporated was that of the Chief Executive does not make the question in this case a political question, not reviewable by the courts, for the Governor was not performing an execu
 
 *465
 
 tive function in issuing Ms proclamation. He was acting under the same authority that any other agency to whom the Legislature might have delegated the authority would have acted under. The reason for the power of the courts to pass judgment upon the validity or invalidity of the acts of an executive officer, when not performed as an executive function, is explained by Chief Justice Marshall in the celebrated case of Marbury v. Madison, 1 Cranch, 165, 2 L. Ed. 69, viz.:
 

 “It follows, then, that the question whether the legality of an act of the head of a department be examinable in a court of justice or not must always depend on the nature of that act.
 

 “If some acts be examinable, and others not, there must be some rule of law to guide the court in the exercise of its jurisdiction.
 

 “In some instances there may be difficulty in applying the rule to particular cases; but there cannot, it is believed, be much difficulty in laying down the rule.
 

 “By the Constitution of the United States the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character and to his own conscience. To aid him in the performance of these duties, he is authorized to appoint certain officers, who act by his authority and in conformity with his orders.
 

 “In such cases, their acts are his acts; and whatever opinion may be entertained of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion. The subjects are political. They respect the nation, not individual rights, and being intrusted to the executive, the decision of the executive is conclusive. The application of this remark will be perceived by adverting to the act of Congress for establishing the department of foreign affairs. This officer, as his duties were prescribed by that act, is to conform precisely to the will of the President. I-Ie is the mere organ by whom that will is communicated. The acts of such an officer; as an officer, can never be examinable by the courts.
 

 “But whfen the Legislature proceeds to impose on that officer other duties; when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts; he is so far the officer of the law, is amenable to the laws for his conduct, and cannot at his discretion sport away the vested rights of others.
 

 “The conclusion from this reasoning is that, where the heads of departments are the political or confidential agents of .the executive, merely to execute the will of the President, or rather to act in cases in which the executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable. But where a specific duty is assigned by 'law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws of his country for a remedy.”
 

 Not only was it not an executive function for the Governor to create a municipal corporation, but it was not a matter within his discretion to determine whether a petition signed by two-thirds of the qualified electors residing in the hamlet should first be presented to him. That was a condition im-' posed by the Legislature, without which the Governor had no authority or jurisdiction to inquire into the matter.
 

 We have regarded — or rather disregarded —the relator’s complaint that the petition to the Governor did not contain a statement of the number of inhabitants of the hamlet, and the complaint that the petition was for the incorporation of a city, instead of a vil
 
 *467
 
 lage, as of little or no importance, beside the fact that the petition was not signed by two-thirds of tlie qualified electors of the hamlet. The statute requires that such a petition shall state the number of inhabitants of the hamlet, but it also requires' only a population of 250 inhabitants to warrant the incorporation of a village; and the certified list of qualified electors annexed to the petition to the Governor showed that there were 1,000 electors, and therefore surely more than that many inhabitants, in the area proposed to be incorporated.
 

 The judgment is affirmed.
 

 THOMPSON, J„ dissents.