ODOM, Justice
 

 (dissenting).
 

 I think House Concurrent Resolution No. 1, which became Act No. 25 of the First Extra Session of 1985, is clearly unconstitutional. It violates section 1, art. 10, Constitution of 1921, which says that “The power of taxation shall be vested in the Legislature; shall never be surrendered, suspended or contracted away,” and section 5, art. 19, which says that “No power of suspending laws of this State shall be exercised unless by the Legislature, or by its authority.”
 

 I concur in the view expressed by the Attorney General in his brief at page 23, that “The Legislature has no right to surrender or suspend its power of taxation by authorizing the Governor to fix a tax at either l(i or
 
 54
 
 per barrel, and to suspend the payment of that tax over any period of time in his discretion.” Citing section 1, article 10, of the Constitution.
 

 The Attorney General further says in his brief on the same page: “The concurrent resolution and section 2 of Act No. 5 of the Extra Session of 1935, adding additional section 41% to Act No. 15 of the Third Extra Session of 1934, surrender to the Governor the right to fix the amount of the occupational-license tax at either
 
 14
 
 or
 
 54
 
 per barrel, and the right to say when the tax shall go into effect, as well as the amount of the tax, the amount of the 'tax, however, not being in his discretion any further than that he either suspends the law so that the tax is
 
 14
 
 per barrel, or he leaves the tax at
 
 54
 
 per barreL Section 41% provides that when the Governor suspends the law so as to fix the tax at
 
 14
 
 per barrel, that such suspension shall be irrevocable, and no tax shall thereafter ac
 
 *321
 
 crue, for the period of suspension. For the period of any suspension, the Legislature has surrendered to the Governor its right to levy a tax in excess of the amount fixed by the Governor in his proclamation.”
 

 It is perfectly clear that it was the purpose of the Legislature to delegate to the Governor discretionary power and authority to so change the law as to fix the tax at 1 cent *per barrel instead of 5 cents. In other words, he was authorized, but not directed, to remit 4 cents of the 5 cents tax levied if he thought it wise and proper to do so. It was left to him to decide whether the oil refiners should pay a tax of 1 cent or 5 cents per barrel on their refined products. He was made the sole judge of' conditions which might warrant a remission of four-fifths of the tax levied by. the Legislature. Clearly this is a complete surrender of the power of taxation, which power is vested exclusively in the Legislature.
 

 The majority opinion states that the power of taxation was not surrendered in this ease “since, at the expiration of the present proclamation by the Governor, the tax will again come back to 5 cents per barrel.”
 

 Even though the tax may come back to five cents per barrel at the end of eight months, which was the time fixed in the proclamation for the suspension, the tax is suspended during eight months, and it is not suspended because the Legislature itself suspended it or directed that it be suspended upon the happening of designated conditions, but because the Governor suspended it under the delegated and purely discretionary authority conferred by the act. The Constitution says that the power of taxation “shall never be surrendered.” That means that the power shall not be surrendered at all, either for a specified time or indefinitely. If the Legislature can surrender its power to tax for eight months, it can surrender it for eight years or longer.
 

 The question then is whether the Legislature, by adopting Act No. 25 of the First Extra Session of 1935, did in fact surrender its power of taxation. It unquestionably did. It conferred upon the Governor of the state the right and power to require the oil refining companies to pay a tax of either 1 cent or 5 cents on each barrel of their refined products. He could not remit all of the 5 cent 'tax, but he could remit 4 cents of it or none of it, as he saw fit. He did reduce the tax to 1 cent for a period of eight months, at the end of which time, as said in the majority opinion, the tax “will come back to
 
 5f’
 
 if he fails or refuses to issue another proclamation prolonging the period of suspension. He is given the power to fix the amount of the tax over such period as he sees fit, not beyond noon of the twentieth day after the Legislature of 1936 adjourns.
 

 The power to fix the amount of a license tax is the power to tax. That, I think, cannot be disputed, nor has it been.
 

 With reference to the suspension of laws, it is said in the majority opinion: “Necessarily, in making such suspensions, the Governor must consider the ‘conditions, circumstances and emergencies’ enumerated in the act, and the fact-finding involved under this general authority covers a large field.”
 

 If the Legislature had enumerated certain conditions, circumstances and emergencies under which the act was not to be operative
 
 *323
 
 and had delegated to the Governor authority to ascertain whether or not such designated conditions, circumstances, and emergencies did in fact exist and had authorized him to suspend the payment of four-fifths of the license tax levied during the existence of such conditions, the act might not have been defective on this ground. But with due respect I call attention to the fact that the Legislature did not in fact state the conditions, circumstances, and emergencies under which the law was to be suspended. The act says that the advisability and necessity for suspending the laws is controlled by “conditions, circumstances and emergencies which arise and subside from time to time,” but does not say what those conditions, etc., are. It is left entirely with the Governor to say what'conditions, etc., would warrant a suspension of the law, and just here is where the act is fatally defective, because the Legislature is the lawmaking body of the state and cannot subordinate its own wisdom and discretion to that of the Governor or any one else.
 

 Conceding that the Legislature might authorize the suspension of a law in case a certain event should take place and authorize its suspension during the existence of specifically designated conditions or emergencies, it does not follow that it could confer upon the Governor or any one else the discretionary power to determine what kind of an event or what conditions and emergencies would warrant its suspension. That is precisely what the Legislature did by enacting the statute here involved.
 

 Elaboration is unnecessary. Mr. Justice Harlan discussed at great length the principle here involved in the case of Union Bridge Co. v. United States, 204 U. S. 364, 27 S. Ct. 367, 51 L. Ed. 523. See also “Constitutional Law”, 6 R. C. L. 164, §§ 165 et seq., 8 Cyc. 830, 12 C. J. 844, §i 329, State ex rel. Higgins, District Attorney pro tem., v. Aicklen, 167 La. 456, 119 So. 425.
 

 I dissent.