367 So.2d 1267 (1979)
Mrs. Leroy FAUL et al., Plaintiffs-Appellees,
v.
SUPERINTENDENT OF EDUCATION, Louis F. Gaudet and the School Board of Jefferson Davis Parish, Defendants-Appellants.
No. 6828.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1979.
*1269 Rankin & Yeldell by Stephen J. Katz, Bastrop, for defendants-appellants.
Tate & Tate by Paul C. Tate, Mamou, for plaintiffs-appellees.
Before CULPEPPER, GUIDRY and SWIFT, JJ.
GUIDRY, Judge.
This appeal questions the correctness of a judgment making peremptory an alternative writ of mandamus which compels certification by the Jefferson Davis Parish Superintendent of Education, Louis F. Gaudet, of petitions submitted to him requesting the institution of a French language program in certain schools within that parish pursuant to LSA-R.S. 17:273.[1]
*1270 On July 6, 1978 and July 20, 1978, Mrs. Faul presented petitions to the Jefferson Davis Parish School Board, signed by approximately seven hundred heads of households, requesting the instruction of the French language at Welsh Elementary School, Ward Elementary School, Hathaway High School, Lacassine High School, Lake Arthur Elementary School and Fenton High School. Superintendent Gaudet wrote a letter to the Jefferson Davis Parish School Board in which he stated that the petitions did not contain the requisite number of signatures to mandate institution of the language program. Mrs. Faul brought suit seeking a writ of mandamus to compel Superintendent Gaudet to certify the petitions in the manner set forth in LSA-17:273.[2]
Robert F. Prather, a member of the Jefferson Davis Parish School Board, intervened, alleging that LSA-R.S. 17:273 was unconstitutional.
After a hearing, the trial court concluded that LSA-R.S. 17:273 was constitutional and rendered judgment making peremptory the alternative writ of mandamus compelling Superintendent Gaudet to perform the following acts:
". . . to determine as to each school the number of households of students attending the school and certify the total number of names on the petition or petitions presented to the school board from each school, indicating the number of signatures certified as valid.
You are further ordered to keep a record of each signature not counted as valid, together with a notation of your reasons for not counting it as valid.
You are further ordered to present the certified petition to the Jefferson Davis Parish School Board . . ."
Intervenor Robert Prather and Superintendent Gaudet have appealed this judgment, urging the following assignments of error:
1. Plaintiff-Appellee does not have a right of action under LSA-R.S. 17:273 as she is not the head of a household.
2. Mandamus should not lie in this case as the acts sought to be compelled are not purely ministerial in nature.
3. LSA-R.S. 17:273 is unconstitutional.
4. LSA-R.S. 17:273 is inoperable because of the lack of proper funding provisions.
I. DID MRS. FAUL HAVE STANDING TO BRING SUIT UNDER LSA-R.S. 17:273?
LSA-C.C.P. Article 681 provides:
"Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts."
Appellants urge that since LSA-R.S. 17:273 permits only the head of a household to sign a petition seeking to institute a second language program in the parish public schools, Mrs. Faul (who is not the head of her household) does not have a right of action under the statute to have the petitions certified. We disagree.
In Melancon v. Police Jury of Lafayette, 301 So.2d 715 (La.App. 3rd Cir. 1974) this court was faced with the problem of determining when a citizen has standing to seek a writ of mandamus to compel action on the part of a public official. Therein we stated:

"First, we must determine whether plaintiff has alleged a special interest in the ruling of the Planning Commission such that he had a right to bring this suit. A citizen and a taxpayer cannot seek mandamus to compel the performance of a duty by a public board, officer or commission, unless it is first established that he possesses a special interest in having the law enforced, which interest sets plaintiff apart from the general public as a whole. Bussie v. Long, 286 So.2d 689 (La.App. 1st Cir. 1973), writ refused 288 So.2d 354 (La.1974)." at page 717.

*1271 Although under the statute it is only the head of a household who may sign a petition seeking to institute a second language program, it is nevertheless feasible that one who would not qualify as the head of a household could have a special and peculiar interest in having such a program instituted. The record reveals that Mrs. Faul has three children attending the public schools of Jefferson Davis Parish. They attend Welsh Elementary School, one of the schools represented by the petitions in question. She would like to have her children participate in a second language program. However, Superintendent Gaudet contends that the number of signatures on the submitted petitions is inadequate to justify instituting the program, and Mrs. Faul's children have been thereby precluded from participating in such a program. As well, the record reveals that Mrs. Faul has been actively promoting interest in the community for this language program, and has been instrumental in getting signatures on these petitions. We find plaintiff's interest in this matter to be actual, direct and tangible, and therefore that she has standing to bring the instant suit.
II. ARE THE ACTS SOUGHT TO BE COMPELLED PURELY MINISTERIAL IN NATURE?
Appellants contend that the writ of mandamus issued in this case seeks to compel Superintendent Gaudet to perform acts which are within his discretion to perform. As a mandamus will not lie to compel a public official to perform a discretionary act, it is argued that the issuance of the writ in this case was improper.
LSA-C.C.P. Article 3863 provides:
"A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor."
Appellants urge that in order for Superintendent Gaudet to certify whether the number of signatures on the petitions meets the statutorial requirements, it is necessary that he determine which students are attending each of the affected schools and who is the head of each household represented on the petitions. It is argued that making these determinations involves the use of discretion, thereby placing compliance with the statute beyond the realm of a ministerial duty. We find that adherence to LSA-R.S. 17:273 is not a matter of discretion on Superintendent Gaudet's part. The statute provides in part:
". . . (the petition) SHALL contain the signatures of at least twenty-five percent of the heads of households of students attending a particular school within the jurisdiction of the parish or city school board. The superintendent of the parish or city schools SHALL determine the required number of signatures needed for each school and SHALL certify whether or not a petition contains the necessary number of signatures." (emphasis added)
Superintendent Gaudet's duty is set forth in unmistakable terms by the statute. He has no discretion in determining whether the requisite number of signatures has been met, but must merely insert statistics into the formula provided by law. Likewise it is not within his discretion to certify that a petition does not have the requisite number of signatures if, in fact, the statutory formula has been met. We find that Superintendent Gaudet's compliance with LSA-R.S. 17:273 involves purely a ministerial act on his part and that mandamus will lie to compel performance of this act.
III. IS LSA-R.S. 17:273 UNCONSTITUTIONAL?

On appeal, several bases for the unconstitutionality of LSA-R.S. 17:273 are urged:
a) The statute enables a minority (twenty-five percent of the heads of households) to control the majority and thereby denies due process.
b) The statute unlawfully delegates legislative power.
c) The statute usurps power of the local school board.
In City of Natchitoches v. State of Louisiana, 221 So.2d 534 (La.App. 3rd Cir. 1969) this court set forth the general rule to be *1272 applied in reviewing the constitutionality of a statute:

"The general rule is that every statute is presumed to be constitutional, and the court is bound to uphold the constitutionality of a statute when it is reasonably possible to do so. Every consideration of public need and public policy upon which the legislation could rationally have been based should be weighed by the court and the statute should be upheld as being valid and enforceable unless it clearly is inconsistent with provisions of the state or federal constitutions. Michon v. Louisiana State Board of Optometry Examiners, 121 So.2d 565 (La.App.2d Cir. 1960); Police Jury of Parish of St. Charles v. St. Charles Parish Waterworks District No. 2, 243 La. 764, 146 So.2d 800 (1962)." at p. 544.

Prefacing our review of LSA-R.S. 17:273 with the above stated presumption of constitutionality, we next consider the specific issues raised by appellants:
A) DOES THE STATUTE DENY DUE PROCESS BY ENABLING A MINORITY TO CONTROL THE MAJORITY?
Appellants urge that the petitioning procedure provided for in LSA-R.S. 17:273 enables 25% of the heads of households of students attending a school to impose their will upon the other 75% and thereby denies due process to the majority. The terms of the statute itself, however, expressly refute appellant's contention in that LSA-R.S. 17:273(B)(2) provides in pertinent part:
". . . Any student shall be exempted from the second language program upon request of the parent or guardian . . ."
Under the statute, if only 25% of the heads of the households of students attending a given school wish to initiate the second language program, only that number need enroll their children in the program. There is no statutorily mandated requirement for any student to participate in the program once it is instituted.
Counsel for appellants cite as authority for their position the case of Higgins v. Village of Jean Lafitte, 306 So.2d 79 (La. App. 4th Cir. 1974) writ denied 309 So.2d 347 (La.), certiorari denied, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 93. In Higgins, the court questioned the constitutionality of LSA-R.S. 33:52, which called for the governor to issue a proclamation of incorporation on receipt of a petition signed by twenty-five percent of the electors in the affected area owning twenty-five percent in value of the land in the affected area. Under LSA-R.S. 33:52, once the requisite number of signatures were presented to the governor on a petition, any interested citizen could file suit and have the reasonableness of incorporation judicially reviewed. On review of the constitutionality of this statute, the court did conclude that but for the proviso enabling an interested person to contest the proposed incorporation in court, the statute would have been patently unconstitutional. However, the cited case is clearly distinguishable from the instant case. In Higgins, if it were not for the review provision, a 25% minority could petition to have an area incorporated and every person living within that area would be affected without a majority voice in the matter. As aforestated, LSA-R.S. 17:273 affects only those persons who choose to be affected by it, and simply gives the affected school an expanded school curriculum to better serve the particular needs of its students. We find that LSA-R.S. 17:273 does not deprive any person of due process of law by enabling the minority to impose its will upon the majority.
Appellants likewise urge that enforcement of this statute would enable a 25% minority to institute a language program that would ultimately bankrupt the local school board. We find no evidence in the record to support appellant's contention. We do not even find evidence in the record upon which we might base an estimate of the actual cost of implementing this program. We therefore find no merit whatsoever in appellants' allegation that the school board would be rendered bankrupt by expanding the curriculum of its schools to offer a second language program.

*1273 B) DOES LSA-R.S. 17:273 UNLAWFULLY DELEGATE LEGISLATIVE POWER?
Appellants urge that by enacting this statute, the legislature has enabled private individuals to exercise legislative powers. We do not agree. LSA-R.S. 273(A) provides in part:
"Commencing with the 1976-1977 school year, each parish school board and city school board in the state is HEREBY AUTHORIZED TO ESTABLISH AS A PART OF THE GENERAL CURRICULUM OF INSTRUCTION THE TEACHING OF A SECOND LANGUAGE." (Emphasis added)
Clearly the legislature has authorized the institution of the second language program, and has merely provided a means by which to determine when community interest has reached such a point as to make the program worthwhile and efficient. The school board has been given the authority to begin a language program in its schools, whether or not it is presented with a petition requesting it to do so. The purpose of the petitioning procedures provided for in the statute is apparently to enable a given community with a particular interest in having such a program instituted a means by which to compel the school board to exercise the authority which the legislature has given it. However, it is not the act of petitioning for the language program which gives the school board the authority to institute the program. Therefore, we do not find that there has been any delegation of power on the part of the legislature to those individuals petitioning for the institution of a language program.
Whereas we do not find that LSA-R.S. 17:273 delegates legislative powers, there are nevertheless areas in which a legislative body may delegate its authority, as long as it provides guidelines sufficiently clear to guarantee that the legislative will is followed. State v. Aicklin, 167 La. 456, 119 So. 425 (1928); Higgins v. Village of Jean Lafitte, supra. Even if there had been a delegation of authority on the part of the legislature by the enactment of LSA-R.S. 17:273, the terms of the statute clearly indicate the intention of the legislature to make a second language program available in schools where special interest for such a program exists. The guidelines provided in the statute for the carrying out of the legislative will are concise. If the statute delegates authority, clearly such a delegation is reasonable and appropriate in this case.
C) DOES LSA-R.S. 17:273 USURP POWERS OF THE LOCAL SCHOOL BOARD?
LSA-Const. Article 8, § 1 provides:
"The legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system."
The legislature has been empowered by our constitution to provide for the education of persons in this state. The powers of the parish school board are enumerated in LSA-R.S. 17:81. Formation of curriculum is not one of the enumerated powers of the school board. In 68 Am.Jur.2d Schools, Sec. 283 it is stated:
"The fundamental power to select the system of instruction and course of study to be pursued in the public schools is in the legislature, and its mandate is final and binding on all persons."
We find that the general grant of power found in LSA-Const. Art. 8, § 1 encompasses the right on the part of the legislature to select the courses of study for schools in this state. Therefore, we find that there has been no usurpation of the school board's authority by LSA-R.S. 17:273.
We find that LSA-R.S. 17:273 is constitutional, and find no merit to appellants' assignments of error.
IV. IS LSA-R.S. 17:273 INOPERABLE BECAUSE IT IS NOT FUNDED?
Appellants allege that the statute is inoperable because there are no funds available to institute a second language program in the schools petitioning for such a program. That portion of the statute which provides for funding states:

*1274 "3. (4) The cost of implementing a second language program at the secondary level (junior and/or senior high schools) will be borne by the local school system. The cost of implementing second language programs in the elementary grades over and beyond the base salary of regularly assigned teachers will be paid from state funds appropriated as a part of the total education budget of the State Department of Education."

We are unable to conclude from the evidence in the record that there are no funds available from any source to initiate these programs. No evidence was produced to establish that the existing faculty in the affected schools would be unable to teach the appropriate courses, nor that the total education budget of the State Department of Education is unable to aid the funding of these programs in any way as provided for in the statute.
We find that there is insufficient evidence from which to conclude that the language program provided for in LSA-R.S. 17:273 cannot be initiated because there is no money available to do so. We therefore find that the statute is not inoperable.
For the above and foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are to be paid by appellants.
Affirmed.
CULPEPPER and SWIFT, JJ., concur in the result.
NOTES
[1] LSA-R.S. 17:273 provides:

§ 273. Second languages; teaching in public schools
A. Commencing with the 1976-1977 school year, each parish school board and city school board in the state is hereby authorized to establish as a part of the general curriculum of instruction the teaching of a second language. The second language curriculum shall be so established as to include a program extending upward through all grades, commencing in the first grade and extending upwards to the twelfth grade, in a well articulated, sequential manner so as to afford all school children in the state the opportunity of attaining proficiency in a second language.
B. (1) If a parish or city school board does not establish a second language program by May 30, 1976, such a program shall be required upon presentation of a petition requesting the instruction of a particular second language. The petition shall be addressed and presented to the parish or city school board and shall request the instruction to be in a particular school. It shall contain the signatures of at least twenty-five percent of the heads of households of students attending a particular school within the jurisdiction of the parish or city school board. The superintendent of the parish or city schools shall determine the required number of signatures needed for each school and shall certify whether or not a petition contains the necessary number of signatures. Parents may petition to initiate second language programs in elementary schools, junior high schools, and senior high schools.
(2) Upon receiving a certified petition, the parish or city school board shall establish the teaching of the designated second language in said school as a part of the general curriculum of instruction. The instruction of the second language shall be developed to include the teaching of the language in each grade of said school in a well articulated and sequential manner so as to afford to the student the opportunity of attaining proficiency in the designated second language. Any student shall be exempted from the second language program upon request of the parent or guardian. The parent shall direct this request to the principal of the school or to the superintendent of the parish or city school system.
(3) Instructors in a second language would be regularly assigned certified teachers at the secondary level or certified second language specialist teachers in the elementary grades one through eight, itinerant in one or more schools, and/or foreign associate teachers selected and approved by the State Department of Education in cooperation with other appropriate state agencies. A second language specialist teacher with a full schedule of second language classes would not be counted in the pupil-teacher ratio in the school of assignment, but would be counted as an additional teacher.
(4) The cost of implementing a second language program at the secondary level (junior and/or senior high schools) will be borne by the local school system. The cost of implementing second language programs in the elementary grades over and beyond the base salary of regularly assigned teachers will be paid from state funds appropriated as a part of the total education budget of the State Department of Education.
C. The State Board of Elementary and Secondary Education shall establish guidelines, regulations, and policies for the implementation of a comprehensive curriculum in a second language in a well articulated sequential manner in order to carry out the intent of this Section.
[2] Suit was initially brought against Superintendent Gaudet and the Jefferson Davis Parish School Board. The School Board was dismissed from the suit upon its exception of prematurity.