440 So.2d 704 (1983)
Don AGUILLARD, et al.
v.
David C. TREEN, et al.
No. 83-CQ-0581.
Supreme Court of Louisiana.
October 17, 1983.
Rehearing Denied November 18, 1983.
*705 Andrew Weltchek, Bachmann, Weltchek & Powers, New Orleans, Jack D. Novik, Jay Topkis, Andre R. Jaglom, Alan Pfeffer, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Ronald L. Wilson, New Orleans, for plaintiffs.
William J. Guste, Jr., Atty. Gen., Kendall L. Vick, Patricia Nalley Bowers, Maureen J. Feran, Cynthia D. Young, Asst. Attys. Gen., Baton Rouge, Samuel I. Rosenberg, Polack, Rosenberg, Rittenberg & Edom, New Orleans, John Di Giulio, Baton Rouge, Marion B. Farmer, Dist. Atty., Roy K. Burns, Jr., Asst. Dist. Atty., Covington, David A. Hamilton, Baton Rouge, John W. Whitehead, Wendell R. Bird, Ware, Parker, Johnson, Cook & Dunlevie, Atlanta, Ga., Sp. Asst. Attys. Gen., Thomas T. Anderson, for defendants.
CALOGERO, Justice.
The following question has been certified to this Court by the United States Fifth Circuit Court of Appeals:
"Whether Louisiana Revised Statutes Annotated Sections 17:286.1 through 17:286.7, the `Balanced Treatment for Creation-Science and Evolution-Science Act' violate Article 8 of the Louisiana Constitution?"
For the reasons which follow, we find that insofar as this statute, La.R.S. 17:286.1-286.7, represents a legislatively-mandated *706 course of study[1] it is in keeping with Article VIII, Section 1's charge to the Legislature to establish and maintain a public education system. It does not violate Article VIII, Section 3 which creates the Board of Elementary and Secondary Education (BESE) and defines that Board's powers, duties and responsibilities. And, of course, under our state constitution, unlike the federal constitution, legislation not prohibited is allowed.
Various plaintiffs[2] filed suit in federal district court against the State of Louisiana, BESE and others.[3] Plaintiffs asked that Louisiana Act 685 of 1981, the "Creation-Science" Act, be declared unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and its implementation enjoined.[4]
Subsequently, BESE was realigned as a party plaintiff and moved for summary judgment, contending that La.R.S. 17:286.1 through 17:286.7 violates the 1974 Louisiana Constitution. In response to that motion, the United States District Court for the Eastern District of Louisiana decided that La. Const. art. VIII vested responsibility for educational policy in BESE rather than in the Legislature and declared that Act No. 685 of 1981 thus violated the 1974 Louisiana Constitution. After appeal, the Fifth Circuit Court of Appeals certified the question quoted above to this Court. Certification was accepted. 430 So.2d 660 (La.1983).[5]
The issue to be decided is whether the 1974 Louisiana Constitution by vesting the responsibility exclusively in BESE prohibits the Legislature from prescribing courses of study in elementary and secondary public schools.
Whether the Legislature requires the teaching of a course, the establishment of a particular curriculum or a balanced treatment between a pair of concepts, it is essentially a question of the Legislature's plenary authority to establish and maintain education *707 within the state. Irrespective of other problems of a legal or constitutional nature that may or may not infect this Act, for our present purposes and for the limited question which we are here called upon to answer, we are focusing just on the Louisiana constitutional authority of the Louisiana Legislature to provide for educational policy to be carried out by BESE.[6]
A brief review of the history of BESE's predecessor, the Louisiana State Board of Education, is in order. The public education article, Art. 224 et seq. of the 1879 Louisiana Constitution did not include any provision for a state board. Art. 250 of the Constitutions of 1898 and of 1913 provided only for the creation of a State Board of Public Education. La. Const. art. XII § 4 (1921) created a State Board of Education, but stated in pertinent part: that "[t]he legislature shall prescribe the duties of said board and define its powers...." This single board was charged with the "supervision and control of all free public schools." [La. Const. art. XII, § 6 (1921)] and "supervision of all other higher educational institutions, subject to such laws as the Legislature may enact." [La. Const. art. XII, § 7 B (1921)]
The State Board, under the 1921 Constitution, wielded little authority. See Jackson v. Coxe, 208 La. 715, 23 So.2d 312 (1945). Even though the Board was given the task of overseeing education at all three levels, the delegates to the 1973 Constitutional Convention believed that the State Board of Education had theretofore devoted the majority of its time to the problems of higher education. The proposed solution was the creation of an independent constitutional board with jurisdiction over public elementary and secondary schools. In introducing the educational proposals that would accomplish that end, Mr. Aertker told the 1973 convention delegates: "[T]he power that is given to this body [BESE] is budgetary power. They will go to the legislature directly with the problems of elementary and secondary education." 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 2251. (November 9, 1973). In adopting the educational article the delegates to the 1973 Constitutional Convention did not further define BESE's function, apart from the language of La. Const. art. VIII, § 3 itself.
State constitutional provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature. Hainkel v. Henry, 313 So.2d 577 at 579 (La.1975). As a result, the Louisiana Legislature may enact any laws that the state or federal constitutions do not prohibit. In re Oxygen Welders' Supply Profit Sharing Plan, 297 So.2d 663 (La.1974). So, in this case, only if the 1974 Louisiana Constitution took away the Legislature's authority to prescribe courses of study in elementary and secondary public schools can this Court properly find that the Legislature was not empowered to adopt the socalled "balanced treatment laws."
Constitutional provisions are to be construed and interpreted by the same rules as are other laws. Barnett v. Develle, 289 So.2d 129 (La.1974); Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958). When a constitutional provision is plain and unambiguous, its language must be given effect.
As adopted, La. Const. art. VIII, § 1 provides: "The legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system."
La. Const. art. VIII, § 3(A) provides:
The State Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and control the public elementary and secondary schools, vocational-technical training and *708 special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees. (Emphasis provided.)
An examination of the second sentence of La. Const. art. VIII, § 3(A) (highlighted above) shows that the language could not be more plain or unambiguous.
The phrase "all as provided by law" follows two clauses which concern supervision, control and budgetary responsibility relative to four categories of schools, clearly indicating that the phrase is intended to apply to both clauses and all of their content. Applying the modifying clause to the first part of the sentence, it states: "It shall supervise and control the public elementary and secondary schools ... as provided by law."
Justice Tate, chairman of the Committee on Style and Drafting at the 1973 Louisiana Constitutional Convention, defined the phrase "as provided by law" while writing for this Court in Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La.1977). Justice Tate wrote:
This section [La. Const. art. VIII, § 3(A)] provides that the board `shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law.

When used in this context, as it was in 103 other instances in the 1974 constitution, the term "provided by law" means "provided by legislation." "Law is the solemn expression of legislative will." Louisiana Civil Code, Art. 1. (emphasis in original) 347 So.2d at 151.
Thus the Board shall supervise and control the public elementary and secondary schools as provided "by the legislature" or "by statute." 347 So.2d at 152. BESE's supervision therefore is not unfettered, but subject to laws passed by the Legislature.
Furthermore, La. Const. art. VIII, § 3(A) of the 1974 Louisiana Constitution is not a self-executing provision. To quote Professor Hargrave, Co-ordinator of legal research for the 1973 Constitutional Convention:
[I]t is accurate to say that the legislature cannot abolish the board or change its method of composition and selection, for those matters are fixed by constitutional provision. But the constitution enumerates no powers unqualified by the as-provided-by-law formula. Any constitutional powers in the board would have to be developed by some argument based on inference and structure and cannot rest on text, for the text only grants powers that are "all as provided by law." L. Hargrave, 38 La.L.Rev. 438 at 441-445 (1978). (Emphasis added.)
BESE's non-exclusive authority is made even more apparent when the BESE constitutional provision is placed side by side with the constitutional provision establishing and empowering the Board of Regents for higher education. Such comparison shows the sharp contrast between BESE's authority and that of the Board of Regents. Whereas La. Const. art. VIII § 3(A) provides that BESE "shall supervise and control the public elementary and secondary schools ... as provided by law," La. Const. art. VIII § 5(A) provides in pertinent part that the Board of Regents "shall plan, coordinate, and have budgetary responsibility for all public higher education ...," without the restrictive qualification "as provided by law."
Therefore the authority of the Board of Regents to plan, coordinate and have budgetary responsibility for public higher education, and to exercise the five specified powers, duties and responsibilities set out in La. *709 Const. art. VIII, § 5(D),[7] are constitutionally defined and "not as provided by law," whereas BESE's authority to supervise, control and have budgetary responsibility for public schools is "all as provided by law."
If the delegates had undertaken to confer upon BESE powers and responsibilities not subject to legislative control, they could have deleted the phrase "as provided by law" in the second sentence of La. Const. art. VIII § 3(A) and could have enumerated unqualified powers for BESE comparable to those in the Board of Regents provision, La. Const. art. VIII § 5. Instead La. Const. art. VIII § 3 balances the constitutional creation of an independent board for elementary and secondary education with the Legislature's ultimate responsibility for public education. It is a symbiotic relationship in which neither the Legislature nor BESE has exclusive authority over public elementary and secondary education. However, given the express language of the constitutional provision, in a contest between the two, BESE's supervision and control must yield to the legislative will as expressed by the elected representatives of the people.
We conclude therefore that BESE is given the power to supervise and control the state's public schools, which includes the determination of educational policy, but that power is subject to the direction of the legislature by virtue of the clear language of the constitutional article which creates BESE and defines the scope of its power. LSA-Const. Art. VIII, § 3(A).
The plaintiffs nonetheless suggest that language in BESE v. Nix, supra supports their position that BESE is to be given the exclusive power to prescribe courses of study for elementary and secondary education in Louisiana. We do not agree. The exclusiveness or non-exclusiveness of BESE's authority to formulate educational policy for the state through prescribing a course of study was not at issue in Nix. Nor was there at issue a weighing of the constitutional rights (or spheres), respectively, of the Legislature and BESE. Nix involved assessment of the respective powers of BESE and the State Superintendent of Education, both constitutional entities, and the Legislature's constitutional role or function in the allocation between those two entities of administrative duties with regard to budgetary responsibilities. The Court in Nix decided at 347 So.2d 150 that
the legislature is given the power by the constitution to provide for the allocation, as between the board and the superintendent, of administrative duties with regard to budgetary responsibility for, and supervision and control of, the public schools of the state.
This power of the Legislature to prescribe duties of the Board is no foreign concept. It was the situation that prevailed in the 1921 Louisiana Constitution. In Jackson v. Coxe, 208 La. 715, 23 So.2d 312 (1945) which admittedly preceded the 1974 Constitution, but was cited approvingly in Nix, supra, it was decided that the power of the Board to supervise and control "all free public schools" in the 1921 Constitution was "qualified by the power of the legislature to prescribe duties of the board." 347 So.2d 152.
Although as discussed earlier in this opinion, the delegates to the 1973 Constitutional Convention were concerned with creating in BESE an independent constitutional body, *710 the language of the constitutional provision adopted by the delegates does not justify the conclusion that BESE was to have the exclusive power to prescribe courses of study for the public elementary and secondary schools of Louisiana. That portion of the opinion in Nix which represents the strongest argument on behalf of BESE's exclusive authority was only dicta and is not controlling.[8] The dispositive holding in Nix concerned only the allocation of administrative and budgetary responsibility between BESE and the State Superintendent of Public Education.
The plaintiffs suggest further that another constitutional provision, La. Const. art. VIII, § 13, grants to BESE the exclusive power to dictate, direct and ordain the content of the educational material used in our public elementary and secondary schools. The argument is not persuasive. La. Const. art. VIII, § 13(A) requires that the Legislature
appropriate funds to supply free school books and other materials of instruction prescribed by the State Board of Elementary and Secondary Education to the children of this state at the elementary and secondary levels.
Even though this provision, by implication, recognizes that school books and other materials of instruction may be prescribed by BESE, there is nothing therein nor elsewhere to suggest that BESE has the exclusive power in that regard nor that the materials prescribed by BESE cannot be in part so done at the Legislature's direction.
La. Const. art. VIII § 1 plainly and unambiguously recognizes the power of the Legislature to provide for, establish and maintain a public educational system in Louisiana. This power includes the right to select courses of study for schools in this state.[9] La. Const. art. VIII § 3(A) creates the Board of Elementary and Secondary Education but expressly qualifies the power of that board to "supervise and control the public elementary and secondary schools" with the phrase "as provided by law." Therefore La. Const. art. VIII § 3(A) does not take away from the Legislature its inherent and plenary authority to pass laws, including those prescribing courses of study in the elementary and secondary schools of this state, but affirmatively respects that authority.
For the foregoing reasons, the answer to the question certified to this Court by the United States Fifth Circuit Court of Appeals is:
No. La.R.S. 17:286.1 through 17:286.7, the "Balanced Treatment for Creation-Science and Evolution-Science Act" does not violate *711 Article VIII, of the Louisiana Constitution of 1974.

CERTIFIED QUESTION ANSWERED.
DIXON, C.J., and WATSON, J., dissent and assign reasons.
LEMMON, J., dissents.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Contrary to my earlier opinion that the certified question can be decided without resort to the ultimate question at issue in this litigation, I now believe that we should decide what "creation-science" is before we can give a valid answer.
In general, I might subscribe to the majority opinion. It holds that the 1974 Constitution, in Article 8, has not removed the power of the legislature to require a certain course of study in the primary and secondary schools. Even that question is not without doubt, because of the provisions of § 13A of Article 8, which require the legislature to supply books and materials of instruction prescribed by the State Board of Elementary and Secondary Education.
Perhaps because the litigants have not forcefully presented the issue, and have submitted to a division of the question, this court avoids the hard issue at the root of that one certified to us. It assumes that "creation-science" is a "course of study."
Since this case was decided on exceptions, there is no record. From all that I have read in the past, "creation-science" is a religious doctrine, not a course of study. R.S. 17:286.1-7 provides:
"§ 286.1. This Subpart shall be known as the `Balanced Treatment for Creation-Science and Evolution-Science Act.'
§ 286.2. This Subpart is enacted for the purposes of protecting academic freedom.
§ 286.3. As used in this Subpart, unless otherwise clearly indicated, these terms have the following meanings;
(1) `Balanced treatment' means providing whatever information and instruction in both creation and evolution models the classroom teacher determines is necessary and appropriate to provide insight into both theories in view of the textbooks and other instructional materials available for use in his classroom.
(2) `Creation-science' means the scientific evidences for creation and inferences from those scientific evidences.
(3) `Evolution-science' means the scientific evidences for evolution and inferences from those scientific evidences.
§ 286.4. A. Commencing with the 1982-1983 school year, public schools within this state shall give balanced treatment to creation-science and to evolution-science. Balanced treatment of these two models shall be given in classroom lectures taken as a whole for each course, in textbook materials taken as a whole for each course, in library materials taken as a whole for the sciences and taken as a whole for the humanities, and in other educational programs in public schools, to the extent that such lectures, textbooks, library materials, or educational programs deal in any way with the subject of the origin of man, life, the earth, or the universe. When creation or evolution is taught, each shall be taught as a theory, rather than as proven scientific fact.

B. Public schools within this state and their personnel shall not discriminate by reducing a grade of a student or by singling out and publicly criticizing any student who demonstrates a satisfactory understanding of both evolution-science or creation-science and who accepts or rejects either model in whole or part.
C. No teacher in public elementary or secondary school or instructor in any state-supported university in Louisiana, who chooses to be a creation-scientist or to teach scientific data which points to creationism shall, for that reason, be discriminated against in any way by any school board, college board, or administrator.
§ 286.5. This Subpart does not require any instruction in the subject of origins but simply permits instruction in both scientific models (of evolution-science and *712 creation-science) if public schools choose to teach either. This Subpart does not require each individual textbook or library book to give balanced treatment to the models of evolution-science and creation-science; it does not require any school books to be discarded. This Subpart does not require each individual classroom lecture in a course to give such balanced treatment but simply permits the lectures as a whole to give balanced treatment; it permits some lectures to present evolution-science and other lectures to present creation-science.

§ 286.6. Any public school that elects to present any model of origins shall use existing teacher inservice training funds to prepare teachers of public school courses presenting any model of origins to give balanced treatment to the creation-science model and the evolution-science model. Existing library acquisition funds shall be used to purchase nonreligious library books as are necessary to give balanced treatment to the creation-science model and the evolution-science model.
§ 286.7. A. Each city and parish school board shall develop and provide to each public school classroom teacher in the system a curriculum guide on presentation of creation-science.
B. The governor shall designate seven creation-scientists who shall provide resource services in the development of curriculum guides to any city or parish school board upon request. Each such creation-scientist shall be designated from among the full-time faculty members teaching in any college and university in Louisiana. These creation-scientists shall serve at the pleasure of the governor and without compensation." (Emphasis added).
Evolution, like gravity a scientific fact, must be taught as a theory. Balanced treatment must be given evolution and creation-science in lectures, textbooks, library materials and educational programs whenever the subject of the origin of man, life, earth or universe[1] is treated.
Furthermore, it does not appear that the legislature reserved to itself the power to decide this question of educational policy.
Article 8 of the 1974 Constitution was treated in Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 (La.1977), in which the constitutionality of Act 455 of 1976 was treated. Section 2 of that act was declared unconstitutional because it deprived a constitutional board (BESE) of its staff, infringing on a constitutional agency's ability to perform its constitutional function. Other sections of the act were held constitutional. In deciding these questions it was necessary to analyze Article 8. We decided "... [t]he board (BESE) is given the constitutional power to determine educational policy for the public schools of the state..." Board of Elementary and Secondary Education v. Nix, supra at 150. The legislature, we held, was "given the power" to provide for the allocation of the administrative duties "... with regard to budgetary responsibility for, and supervision and control of, the public schools of the state." 347 So.2d at 150. "The ultimate resolution of the delegates... was to recognize the board's ultimate responsibility for educational policy, free of legislative control over the composition and existence of the board ..." 347 So.2d at 151.
We continued:
"Stated another way, the most reasonable interpretation of Article 8, Section 3(A) is that the legislature shall provide by law for the supervision, control, and budgetary power of the board over elementary and secondary education. However, the constitutional provision cannot be interpreted to mean that the legislature can regulate and limit the constitutional power of the board to supervise, control, and budget elementary and secondary education." 347 So.2d at 153.
Whether Article 8 must be interpreted to prohibit any legislative requirement that a course of study or a subject matter be *713 taught may be put aside until another day, but we have already decided that educational policy is the function of BESE, under the authority of Article 8, La. Const. of 1974.
WATSON, Justice, dissenting.
The majority errs in holding that the legislature has absolute power: to order the teaching of course materials; prescribe textbooks;[1] limit library materials; and restrict educational programs in our public schools. However, this is the inevitable conclusion if all of the following aspects of this case are thoroughly considered. First, the facts:

FACTS
Various plaintiffs filed suit in federal court against the State of Louisiana, its Board of Elementary and Secondary Education (BESE), and others. Plaintiffs asked that Louisiana Act 685 of 1981, the "Creation-Science" Act, be declared unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States and its implementation enjoined.
Subsequently, the Louisiana State Board of Elementary and Secondary Education was realigned as a party plaintiff. BESE moved for summary judgment, contending that the Act (LSA-R.S. 17:286.1-17:286.7) violates the Louisiana Constitution. The federal district court correctly decided that Article VIII of the state constitution vests responsibility for educational policy in BESE rather than the legislature and declared that the Act violated the Louisiana Constitution. After appeal, the Fifth Circuit Court of Appeals certified the question to the Louisiana Supreme Court. Certification was accepted. 430 So.2d 660 (La. 1983).[2]
A similar Arkansas Act violated the First Amendment to the United States Constitution. McLean v. Arkansas Board of Education, 529 F.Supp. 1255 (1982). As the educational amici observe in their brief, "[p]olitical agitation over the teaching of evolution in the public schools ... has created a good deal of unhappy history," citing McLean, Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), and Scopes v. State, 154 Tenn. 105, 289 S.W. 363 (1927). For similar constitutional problems, cf. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) and People v. Sandstrom, 279 N.Y. 523, 18 N.E.2d 840 (1939).

THE ISSUE
The issue is whether the Constitution of 1974 denied the legislature authority to prescribe courses of study in elementary and secondary public schools by vesting that responsibility in BESE.

CONSTITUTIONAL BACKGROUND
To fully appreciate the problem, it is necessary to review briefly the history of state educational boards in Louisiana. The Constitution of 1921 in Article XII, provided for public education and established a state board of education, as well as the office of Superintendent of Public Education, but pointedly mandated:
"The legislature shall prescribe the duties of said board and define its powers...."[3]
The State Board, under the 1921 Constitution, wielded little authority. See Jackson v. Coxe, 208 La. 715, 23 So.2d 312 (1945).
The framers of the Constitution of 1974 adopted a different tack; a Board of Elementary and Secondary Education was created, as were a Board of Regents for "public higher education" (Art. 8, § 5), a Board of Trustees for State Colleges and Universities (Art. 8, § 6) and Boards for L.S.U. and *714 Southern University (Art. 8, § 7). Significantly, the Constitution of 1974 omitted any proviso that the legislature was to prescribe the powers of BESE, including only the phrase "all as provided by law", which will be discussed below.

LAW
Louisiana Constitution of 1974, Article VIII, § 1 states:
"The legislature shall provide for the education of the people of the state and shall establish and maintain a public educational system."
Article VIII, § 3(A) provides:
"The State Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees."[4]
Article VIII, § 13(A) specifies:
"The legislature shall appropriate funds to supply free school books and other materials of instruction prescribed by the State Board of Elementary and Secondary Education to the children of this state at the elementary and secondary levels."
The heart of Act 685 is found in LSA-R.S. 17:286.4(A) as follows:
"Commencing with the 1982-1983 school year, public schools within this state shall give balanced treatment to creation-science and to evolution-science. Balanced treatment of these two models shall be given in classroom lectures taken as a whole for each course, in textbook materials taken as a whole for each course, in library materials taken as a whole for the sciences and taken as a whole for the humanities, and in other educational programs in public schools, to the extent that such lectures, textbooks, library materials, or educational programs deal in any way with the subject of the origin of man, life, the earth or the universe. When creation or evolution is taught, each shall be taught as a theory, rather than as proven scientific fact."

DEFENDANTS' ARGUMENTS
Essentially the defendants argue that (1) the phrase "as provided by law" contained in Article VIII, § 3(A) gives the legislature authority to prescribe courses of study; (2) the different scheme provided for the Board of Regents supports this theory; (3) the acts requiring the teaching of sixteen other subjects prior to the Creationism Act demonstrates the authority claimed; and (4) many other states have recognized judicially the authority of legislatures to prescribe courses of study.
This court has previously addressed the meaning of the phrase "as provided by law". Board of Elementary and Secondary Ed. v. Nix, 347 So.2d 147 (La., 1977). Further study reinforces the conclusion stated in Nix:

"The constitutional scheme evidenced by these provisions is:
"The board is given the constitutional power to determine educational policy for the public schools of the state. In this regard, the superintendent's responsibility is to implement the policies adopted by the board. The superintendent is the administrative head of the department of education. However, for reasons to be set forth more fully below, the legislature is given the power by the constitution to provide for the allocation, as between the board and the superintendent, of administrative duties with regard to budgetary responsibility for, and supervision and control of, the public schools of the state." 347 So.2d at 150.
*715 The constitutional provisions concerning the Board of Regents fail to support defendants' argument. Although they differ slightly from the provisions for BESE, it does not follow that BESE's powers are subordinate to the legislature.
Likewise, the fact that the legislature has made other provisions for curricula in the past is not decisive as to the legislature's authority. Several of the acts were passed prior to the adoption of the 1974 Constitution; some after. For example, the Kindness to Dumb Animals Act (LSA-R.S. 17:266) and the Military Science and Tactics Act (LSA-R.S. 17:267) were passed in 1916 and 1924, respectively; the Civics Act (LSA-R.S. 17:274.1) was adopted in 1976 and the Breast Self-Examination Act (LSA-R.S. 17:275) in 1980. In the past, BESE has not challenged various legislative directives concerning subjects to be taught in the schools. This acquiescence has no legal significance. BESE is dependent on the legislature for funding and obviously must give some deference to the legislature's actions.
Defendants' brief[5] cites a multitude of jurisprudence from other jurisdictions upholding legislative authority over curricula under constitutional provisions said to be similar to Louisiana's. However, it is conceded that the Louisiana scheme is unique: a constitutional board to "supervise and control" the public schools. No contention is made by either side that there is another state with precisely the same system. The ultimate conclusion implicit in defendants' arguments and the majority's decision is that the establishment of BESE as a constitutional agency had no purpose.

THE JUNEAU AMENDMENT
The theory that the legislature retained the right to dictate courses of study is seriously impaired by a review of the proceedings of the Louisiana Constitutional Convention, and particularly the defeat of the "Juneau Amendment". On November 9, 1973, Delegate Juneau proposed an amendment as follows:
"`Section 4. Educational Boards
"`Section 4. The legislature shall establish such board or boards as may be necessary to meet the educational needs of the state. The duties and responsibilities of such board or boards shall be provided by law.'" 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 2260.
After considerable debate and many questions,[6] the amendment was defeated 23-78. The defeat of the proposal indicates clearly that the legislature was denied plenary authority over state educational boards.
What the Constitution of 1974 adopted was a system whereby the legislature was given financial responsibility for primary and secondary education and BESE, a constitutional board, was given supervision and control.

CONCLUSION
BESE has the constitutional power to supervise and control educational policy at *716 the elementary and secondary levels. LSA-Const. Art. VIII, § 3(A). Having "... the constitutional power to determine educational policy for the public schools of the state", (Board of Elementary and Secondary Education v. Nix, 347 So.2d 147 at p. 150), the BESE Board is not required to share that authority with the legislature. The content of the schools' curricula is a matter of educational policy.
There must have been some purpose in giving BESE, an elected board, constitutional status. BESE was intended to exercise an independent function. If this function were purely ministerial, BESE's constitutional status would be meaningless. Funding and the allocation of administrative duties between BESE and the Superintendent of Education are "as provided by law". Nix, supra. The Constitution does not delineate the exact parameters of BESE's authority, but the constitutional division of powers between BESE and the legislature is implicit in Article VIII, § 13.
Article VIII, § 13, provides that "school books and other materials of instruction" are to be "prescribed" by the State Board of Elementary and Secondary Education. Thus, BESE, rather than the legislature, has the power to dictate, direct and ordain the content of the educational materials used in the elementary and secondary schools.[7]
The legislature, by prescribing the teaching of "Creation-Science" in Act 685 of 1981, attempted to dictate educational policy in violation of Article VIII of the Louisiana Constitution.
Therefore, I respectfully dissent.
NOTES
[1] Admittedly, the Balanced Treatment Act involves more than merely a course of study since it requires that a balanced treatment be given to evolution science and to creation science whenever the subject of origins arises within the established science and humanities curricula of the public schools. However, for the purposes of brevity in this opinion, we refer to this act as one which establishes a "course of study."
[2] Plaintiffs are: Don Aguillard; Reverend Phillip Allen; Dr. Paul Biesenherz; Rabbi Murray Blackman; Quentin Dastugue; Charles B. Donnellan, Individually and as father and next friend of Mary and Kathleen Donnellan; Dr. Milton Fingerman; Anthony J. and Gayle Gagliano, Individually and as parents and next friends of Lisa Gagliano; Reverend William W. Hatcher; Louisiana Federation of Teachers; Louisiana Science Teachers Association; Father George Lundy; Reverend James H. Monroe; National Association of Biology Teachers, Inc.; National Coalition for Public Education and Religious Liberty; National Science Supervisors Association; National Science Teachers Association; Rabbinical Council of New Orleans; Reverend F.T. Schumacher; Nancy Schweitzer; Bishop Kenneth Shamblin; Reverend Lonnie M. Sibley; Keith Sterzing, Individually and as Father and next friend of Lara and Peter Sterzing; Reverend James L. Stovall; University of New Orleans Federation of Teachers; Dr. Malcolm Coffin Webb, Individually and as Father and next friend of Peter and Joel Webb; Reverend Charles S. Womelsdorf; and American Association for the Advancement of Science.
[3] Other defendants are: Governor David C. Treen; Attorney General William J. Guste, Jr.; the State Department of Education; the Orleans Parish School Board (later realigned as plaintiff); the St. Tammany Parish School Board; and J. Kelly Nix, in his official capacity as State Superintendent of Education.
[4] The heart of Act 685 is found in La.R.S. 17:286.4(A) as follows:

"Commencing with the 1982-1983 school year, public schools within this state shall give balanced treatment to creation-science and to evolution-science. Balanced treatment of these two models shall be given in classroom lectures taken as a whole for each course, in textbook materials taken as a whole for each course, in library materials taken as a whole for the sciences and taken as a whole for the humanities, and in other educational programs in public schools, to the extent that such lectures, textbooks, library materials, or educational programs deal in any way with the subject of the origin of man, life, the earth or the universe. When creation or evolution is taught, each shall be taught as a theory, rather than as proven scientific fact.
[5] La.R.S. 13:72.1; Louisiana Supreme Court Rule XII.
[6] As ably stated by the state in its brief to this Court, this certification does not involve the constitutionality of Act 685 under the First Amendment to the U.S. Constitution which is an issue solely to be decided by the U.S. District Court, where plaintiff's lawsuit has been filed. Nor does this certification involve any scientific or religious question related to creation-science or evolution-science.
[7] La. Const. art. VIII, § 5(D) reads in pertinent part:

D. Powers.... The Board of Regents shall have the following powers, duties, and responsibilities relating to public institutions of higher education:
(1) To revise or eliminate an existing degree program, department of instruction, division, or similar subdivision.
(2) To approve, disapprove, or modify a proposed degree program, department of instruction, division, or similar subdivision.
(3) To study the need for and feasibility of any new institution of post secondary education....
(4) To formulate and make timely revision of a master plan for higher education....
(5) To require that every higher education board submit to it, at a time it specifies, an annual budget proposal....
[8] The Court said at 347 So.2d 152:

In summary, therefore, as expressly recognized by Section 3(A), the legislature may determine, as between the superintendent and the board, the administrative budgetary responsibility for, and administrative supervision and control of, the public educational facilities and programs within their jurisdiction.
Then the Court continued at 347 So.2d 153.
However, in view of the constitutional intent to confer ultimate policy-making power upon the board, the legislature may not in the guise of administrative regulation deprive the board of its constitutional policy-making duties and powers.
Stated another way, the most reasonable interpretation of Article 8, Section 3(A) is that the legislature shall provide by law for the supervision, control, and budgetary power of the board over elementary and secondary education. However, the constitutional provision cannot be interpreted to mean that the legislature can regulate and limit the constitutional power of the board to supervise, control, and budget elementary and secondary education.
[9] The only other court to consider whether La. Const. art. VIII § 1 included the right to select curriculum was the Third Circuit Court of Appeal in Faul v. Superintendent of Education, 367 So.2d 1267 (La.App. 3rd Cir.1979). In Faul, a local school board was challenging the constitutionality of a state statute which mandated that the French language be taught in the public schools. The appellate court found at 367 So.2d 1273:

that the general grant of power found in LSA-Const. Art. 8, § 1 encompasses the right on the part of the legislature to select the courses of study for schools in this state. Therefore, we find that there has been no usurpation of the school board's authority by LSA-R.S. 17:273.
[1] Note the confusion. Origins of life, earth and universe are theories.
[1] Shall we burn the books which do not give creationism and evolution balanced treatment "... in textbook materials taken as a whole for each course..."? LSA-R.S. 17:286.4(A) says yes, but LSA-R.S. 17:286.5 says no. See Footnote 7, infra.
[2] LSA-R.S. 13:72.1; Louisiana Supreme Court Rule XII.
[3] LSA-Const. of 1921, Art. 12, § 4 in part.
[4] Emphasis added.
[5] An able example of written appellate advocacy.
[6] During the discussion of this amendment, delegate Kelly stated in opposition:

"[W]e're not just talking about higher education. We're not even going to have a basic plan for elementary and secondary education under this particular amendment...." 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 2264.
Delegate Champagne commented:
"[E]ducation in this great state is far too expensive and too great a proposition to submit to the changing whims of the people who represent the State of Louisiana." 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 2265.
Delegate Graham added his opposition:
"I personally think that the worst thing we could do regarding the entire concept of governance of education for the children of our state, and for the people of this state would be to completely leave in the hands of the legislature all facets concerning education. I think that it is very important that we do provide some basic framework in our constitutiona framework that cannot be changed each year with each session of the legislature...." 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 2266.
[7] Act 685 is ambivalent on the subject of textbooks. In § 286.4(A), it strongly implies that the schools would be required to obtain and use text books teaching "creation-science", an invasion of BESE's constitutional authority, while § 286.5 disclaims a requirement for each individual textbook to give balanced treatment or for school books to be discarded.