LOTTINGER, Chief Judge.
The subject of this litigation is Louisiana’s graduation exit examination (GEE) which has been a requirement for obtaining a state high school diploma since 1989. The five plaintiffs in this case, all Louisiana public school students, failed to pass the GEE before the end of their senior year in high school. They have all accumulated the required 23 Carnegie units[1] necessary for graduation but, because of their failure to pass the GEE, they have not received then-respective diplomas. Plaintiffs filed this suit seeking the award of their high school diplomas and a declaration as to the invalidity of the Board of Elementary and Secondary Education’s (BESE) GEE policy.
Following a hearing, the trial judge issued a preliminary injunction prohibiting BESE *551 from withholding the plaintiffs’ state high school diplomas despite their failure of the GEE. In his written reasons for judgment, the judge stated that the GEE has been unconstitutionally administered in violation of the equal protection clause of the United States and Louisiana Constitutions. From this judgment, BESE appeals.
The central issues raised by this appeal are:
(1) whether BESE has authority to establish the GEE as a graduation requirement; and
(2) whether the GEE is being administered in violation of the equal protection clause.
BESE’S AUTHORITY
Plaintiffs assert that BESE exceeded the scope of its authority in adopting the GEE because the legislature did not specifically authorize a graduation exit exam. For the reasons assigned below, we conclude that BESE has authority to establish the GEE as a requirement for obtaining a state diploma.
Article VIII Section 3(A) of the Louisiana Constitution provides that:
I sThe State Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and control the public elementary and secondary schools, vocational-technical training and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees.
The Louisiana Supreme Court, in Aguillard v. Treen, 440 So.2d 704, 708 (La.1983), concluded that this constitutional provision is not self-executing. Thus, BESE’s supervision and control of public elementary and secondary education is not unfettered, but is subject to the laws passed by the legislature.[2] Id. We therefore look to legislative enactments in search of BESE’s authority to establish the GEE.
The legislature set forth the general powers of BESE in La.R.S. 17:6. This statute contains numerous grants of specific powers as well as the following general provision:
A. In the exercise of its supervision and control over the public elementary and secondary schools, vocational-technical and postseeondary vocational-technical schools and programs except in colleges and universities, and special schools under its jurisdiction, and in the exercise of its budgetary responsibility for all funds appropriated or allocated by the state for public elementary and secondary schools, vocational-technical and postsecondary vocational-technical programs and schools except colleges and universities, and special schools placed under its jurisdiction, the board shall have authority to:
(15) Perform such other functions as are necessary to the supervision and control of those phases of education under its supervision and control.
Under this grant of general power and in the absence of specific legislation regarding the development of a graduation exit exam, BESE retains the authority to establish the GEE.
In brief, plaintiffs assert that BESE exceeded its authority because “the legislature did not express the intent in [La.R.S. 17:24.4] that the eleventh grade criterion- *552 referenced test was to be administered as a graduation exit exam.” The pertinent parts of this statute provide:
A. (2) “The Louisiana Educational Assessment Program” means a process of measuring pupil performance in relation to grade appropriate skills, state curriculum standards, and national indices.
F. The Department of Education shall begin implementation of a Louisiana Educational Assessment Program, with the approval of the State Board of Elementary and Secondary Education.... A grade eleven criterion-referenced test shall be piloted no later than the 1987-1988 school year with implementation no later than 1988-1989.
La.R.S. 17:24.4.
While plaintiffs are correct in their assertion that the statute is devoid of legislative intent regarding graduation exit exams, this silence does not imply that BESE exceeded the scope of its authority. Under La.R.S. 17:6(A)(15), BESE has broad powers to perform such functions as are necessary for the supervision and control of public education. Because the legislature has not expressed a contrary intent[3], BESE retains the power under this statute to implement the GEE as a graduation requirement.
For the foregoing reasons, we conclude that BESE has authority to ^establish the GEE as a requirement for obtaining a state high school diploma. Having reached this conclusion, we now consider whether BESE’s administration of the GEE violates the equal protection clause.
EQUAL PROTECTION
In challenging BESE’s GEE policy, plaintiffs note that students attending state approved non-public schools, home study students, and persons obtaining a General Educational Development Diploma (GED), are not required to take the GEE prior to receiving a state diploma. On the other hand, public school students must successfully complete the 23 Carnegie units and pass the GEE before obtaining a state diploma. Based on this uneven administration of the GEE, the trial judge concluded “that the Graduate Exit Exam (GEE) has been unconstitutionally administered in violation of the Equal Protection Laws of the Fourteenth Amendment of the U.S. and Louisiana Constitution[s].”
After a careful review of the applicable constitutional provisions and jurisprudence, we conclude that the trial judge erred in holding that the GEE is being administered in violation of the equal protection clause.
A. BESE’s Authority Over Non-public Schools
We first consider the scope of BESE’s authority over non-public schools. La. Const, art. VIII § 4 gives BESE the limited power to approve “a private elementary, secondary, or proprietary school with a sustained curriculum or specialized course of study of quality at least equal to that prescribed for similar public schools_” According to the testimony of Louisiana State Superintendent of Education, Raymond G. Arveson, the key factor in approving a nonpublic school is whether the school offers the 23 Carnegie units. In granting or withholding approval, BESE may only compare the quality of the curriculum of the non-public school with the mandated curriculum of the public schools. This limited constitutional authority to approve non-public schools does not empower BESE to mandate the contents of the courses taught or to require that the students pass the GEE prior to graduation.
*553 BESE’s authority over non-public schools is further constrained by the United States Constitution. The United States Supreme Court has held that the Firsthand Fourteenth Amendments prevent the state from intruding into family decisions in the areas of religious freedom and parental control over the rearing of children.
The right of parents to choose the means and methods whereby their children may be educated free from unreasonable or excessive government interference is a liberty protected by the Fourteenth Amendment. In Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), the Court set forth the following:
Under the doctrine of Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446, we think it entirely plain that the Act of 1922 unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state. The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only. The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.
Pierce, 268 U.S. at 534-35, 45 S.Ct. at 573.
The Court reaffirmed the constitutional right of parental choice in Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Therein the Court acknowledged that the state may “impose reasonable regulations for the control and duration of basic education.” Id. at 213, 92 S.Ct. at 1532. However, the Court limited this power by observing that reasonable regulations must “yield to the right of parents to provide an equivalent education in a privately operated system.” Id. The Court then concluded:
[t]hus, a State’s interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the religious upbringing of their children so long as they, in the words of Pierce, “prepare [them] for additional obligations.”
Id. at 214, 92 S.Ct. at 1532.
Under these constitutional proscriptions, BESE cannot dictate the curriculum or set exit exam requirements in non-public schools without infringing upon the rights of parents who choose to send their children to non-public schools or who bchoose religious over public education.
B. The Holdings of Debra P.
The seminal case in the area of exit exams arose under similar circumstances in Florida. Debra P. v. Turlington, 644 F.2d 397 (5th Cir.1981). In Debra P. a group of Florida high school students challenged the validity of the Florida State Student Assessment Test which was a condition for receipt of a high school diploma.[4] The Fifth Circuit held that there was no equal protection violation merely because the exit exam was applied only to public school students. Id. at 406. Citing Ambach v. Norwich, 441 U.S. 68, 77, 99 S.Ct. 1589, 1595, n. 8, 60 L.Ed.2d 49, 57 (1979), the court stated, “the state need not correct all the problems of education in one fell swoop and it has a stronger interest in those for which it pays the cost.” Id. at 406-07.
A second holding in the Debra P. ease is that an exit exam cannot be made a requirement for graduation unless it is specifi *554 cally tied to the curriculum taught in the schools.[5] Id. at 406. This is known as a criterion-referenced examination. The requirement that exit exams be criterion referenced is necessary to avoid equal protection problems which may arise if the test attempts to gauge general knowledge and is consequently biased because of social and noneducational factors.
According to Debra P., the state may impose an exit exam requirement on students without violating equal protection, provided the exam is specifically tied to the curriculum. The GEE is a five part, criterion referenced exam which tests skills from Louisiana’s mandated public school curriculum. The English Language Arts, igWritten Composition, and Mathematics portions of the GEE are first administered in the 10th grade. Students who fail any of these portions may retake them in the 11th and 12th grades. The Science and Social Studies portions are first given in the 11th grade and may be retaken in the 12th grade.[6] Remediation is offered for students who have failed any section of the GEE. Remediation and testing remain available to students after completion of their high school curriculum.
The GEE requirement applies to public high school students with exceptions for home study students[7], persons who obtain a GED[8], and non-public school students[9]. These limited exceptions are not arbitrary, but rather are mandated by the holding of Debra P. which prohibits the state from requiring passage of an exit exam unless the exam tests the content of subjects actually taught in the schools.
As discussed above, the Louisiana and U.S. Constitutions prohibit BESE from dictating the contents of the curriculum in non-public schools and in home study programs. Thus, requiring these students to pass a test covering materials that were not necessarily taught, clearly violates the rule of Debra P. Additionally, because Debra P. mandates that exit exams be criterion referenced, persons who obtain a GED cannot be required to pass the GEE which is based on the curriculum taught in Louisiana’s public schools.
In sum, because BESE cannot mandate the content of the curriculum taught in nonpublic schools or in home study programs and because Debra P. requires that exit exams be criterion referenced, BESE cannot require that non-public students, home study students, or persons obtaining a GED pass the GEE prior to receiving a state diploma.
|9C. The Rational Relationship Standard
In analyzing equal protection claims, the courts have established three standards of review. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1107 (La.1985) (on rehearing). When legislative enactments classify persons by race or religious beliefs, the strict scrutiny standard is applied. For classifications based on birth, age, sex, culture, physical condition, or political ideas or affiliations, an intermediate standard of review is appropriate. All other classifications are analyzed under the rational relationship standard.
In the present case, the classification of public versus non-public school stu *555 dents[10] does not involve any of the suspect or intermediate classifications recognized under the Equal Protection analysis. Thus, the rational relationship standard is the proper standard of review. Under this standard the challenger must establish that the legislative classification at issue is not rationally related to any legitimate state purpose. Pierre v. Administrator, Louisiana Office of Employment Security, 553 So.2d 442, 447 (La.1989).
In applying the rational relationship standard in Debra P., the court held that the exit exam bears a rational relation to Florida’s valid interest of insuring the functional literacy of its graduating students. Debra P., 644 F.2d at 406. In the present case, the state of Louisiana has a valid interest of insuring the minimum competency of persons obtaining a state diploma. The GEE bears a rational relationship to this goal by insuring that students who obtain a state diploma have reached the required level of competency. We also note that BESE’s policies regarding remediation and retesting further the state’s interest by providing failing students an opportunity to achieve the required level of competency.
Plaintiffs suggest that because approved non-public schools receive state funding, the state also has an interest in the quality of education in those non-public schools. The United States Supreme Court has recognized that limited financial assistance to non-public school students is permissible provided it does not create an I ipexcessive government entanglement with the non-public schools. Lemon v. Kwrtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Limited funding to non-public school students does not authorize the state to impose curriculum or graduation requirements on non-public school students. Any attempt to establish the GEE requirement in a nonpublic school would be an “excessive entanglement” and thus, violate the First Amendment of the United States Constitution.
Although the state provides certain funds for services which directly assist students in non-public schools, we join the Debra P. court in acknowledging that the state has a stronger interest in the public education for which it pays the costs. We conclude that the GEE does not violate the equal protection clause because it’s administration is rationally related to the state’s legitimate interest of insuring minimum competency among persons obtaining a state diploma.
CONCLUSION
For the foregoing reasons, we conclude that BESE has the authority to establish the GEE as a requirement for obtaining a state high school diploma and that BESE’s administration of the GEE does not violate the equal protection clause. Accordingly, we reverse that portion of the trial court’s judgment which states that the GEE violates the equal protection clause and we vacate the preliminary injunction issued with respect to the plaintiffs diplomas. Costs of this appeal are assessed against plaintiffs.
REVERSED AND RENDERED.

. Prior to implementation of the GEE, the only academic requirement for high school graduation was the successful completion of 23 Carnegie units. The required units presently consist of 4 units of English, 3 units of mathematics, 3 units of science, 3 units of social studies, 2 units of health and physical education, ½ unit of computer literacy, and 7½ units of electives. Louisiana Department of Education, Louisiana Handbook for School Administrators (revised November 1992).

. In answering a certified question from the United States Fifth Circuit Court of Appeals, the Aguillard court discussed the meaning of the phrase "as provided by law” contained in La. Const, art. VIII § 3(A). The court concluded that according to this phrase, “the Board shall supervise and control the public elementary and secondary schools as provided 'by the legislature’ or ‘by statute.' ” Id. at 708, see also Board of Elementary and Secondary Education v. Nix, 347 So.2d 147, (La.1977) (The Louisiana Supreme Court interpreted La. Const, art. VIII § 3(A) to mean that although the legislature shall provide by law for the supervision, control, and budget-aiy power of the board, the legislature cannot regulate and limit BESE's constitutional grant of power to supervise, control, and budget education.)

. House Concurrent Resolution 204 of 1989 provides some evidence of the legislature's intent regarding the GEE. In April of 1989, BESE adopted a resolution requiring all Louisiana students, public and non-public, to pass the GEE before obtaining a state high school diploma. In response to this resolution, the legislature adopted House Concurrent Resolution 204 which expresses the legislature’s intent to limit the applicability of the GEE to public school students. Following this action by the legislature, BESE adopted a new policy which stated that the GEE would be mandatory for public students and optional for non-public students.
This resolution is significant in that the legislature did not disapprove of BESE's plans to make the GEE a requirement for Louisiana's public school students.

. Plaintiffs attempt to distinguish the Debra P. case from the present case by noting that "the' Louisiana State Legislature has expressed no interest in the implementation of a graduation exit exam which is different from the State of Florida." In light of our conclusions in the first portion of this opinion, this distinction does not affect the application of the Debra P. holdings to the facts of this case.

.The Fifth Circuit remanded the case to hear evidence on whether Florida’s exit exam tested materials actually taught in Florida’s public schools and to determine whether the exam had a racially discriminatory impact. Id. at 408. Following the district court’s decision on remand, the case was appealed to the Eleventh Circuit Court of Appeals. Debra P. v. Turlington, 730 F.2d 1405 (11th Cir.1984). The Eleventh Circuit affirmed the district court’s findings that the Florida students were taught tested skills, that the exam did not discriminate, and that the exam would help remedy the vestiges of past segregation. Id. at 1416-17.

. Students are afforded four opportunities to take and pass the Science and Social Studies portions of the exam and they have six opportunities to take and pass the other sections.

. Home study students who return to the public school system in the eleventh grade are not required to take three of the five parts of the GEE and students returning in the twelfth grade are not required to take any part of the exam.

. Persons obtaining a GED are not required to take any part of the GEE.

. BESE maintains a policy of optional participation for approved non-public schools.

. There is no evidence in the record which attempts to set forth the number of non-parochial schools in Louisiana vis a vis parochial schools. Therefore, under the equal protection analysis, the students are classified as public versus nonpublic.