Dear Representative Flavin:
I am in receipt of your request for an Attorney General's opinion concerning the constitutionality of the TOPS program. You seek an opinion as to whether students from a Louisiana nonpublic high school not approved by BESE can be eliminated from the TOPS program. The Louisiana Tuition Opportunity Program (TOPS) is found in LSA-R.S. 17:3048.1 et seq. As provided in LSA-R.S.17:3048.1(A)(1)(b), one of the qualifications for students that are in the TOPS program is they are required:
 . . . to have graduated from a public high school or a nonpublic high school which has been approved by the State Board of Elementary and Secondary Education. . . .
Article VIII Section 3(A) of the Louisiana Constitution of 1974 provides:
 . . . The State Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and control the public elementary and secondary schools and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees.
The Louisiana Supreme Court in Aguillard v. Treen,440 So.2d 704, 708 (La. 1983) concluded that this constitutional provision is not self-executing. The Louisiana Supreme Court opined that BESE'S supervision and control of public elementary and secondary education is not unfettered, but is subject to the laws passed by the legislature.
The legislature set forth the general powers of BESE in LSA-R.S. 17:6. This statute contains numerous grants or specific powers as well as the following general provision:
 A. In the exercise of its supervision and control over the public elementary and secondary schools, vocational-technical and postsecondary vocational-technical schools and programs except in colleges and universities, and special schools under its jurisdiction, and in the exercise of its budgetary responsibility for all funds appropriated or allocated by the state for public elementary and secondary schools, vocational-technical and postsecondary vocational-technical programs and schools except colleges and universities, and special schools placed under its jurisdiction, the board shall have authority to:
 (15) Perform such other functions as are necessary to the supervision and control of those phases of education under its supervision and control.
The Louisiana Constitution of 1974 Article 1 § 3 provides the following concerning the right to individual dignity. It states:
 No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
As stated in Sibley v. Board of Supervisors of Louisiana StateUniversity, 477 So.2d. 1094 (La. 1985):
 . . . Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely;[20] (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis;[21] (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.[22] With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.[23]
In the present case, students that graduate from a nonpublic high school that is approved by BESE can participate in the TOPS program provided they meet the other qualifications as set forth in LSA-R.S. 17:3048.1. However, students who attend a nonpublic high school that is not approved by BESE are not candidates for the TOPS program.
In applying the analysis of Article 1, Section 3 inSibley to the present situation, the third situation applies. This situation states that a law shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. It appears that the Legislature has a legitimate interest in assuring a minimum competency of persons that participate in the TOPS program. Moreover, prior to receiving approval, a nonpublic school must demonstrate that it complies with Brumfield Dodd criteria to ensure it does not discriminate on the basis of race. This, too, furthers a legitimate state interest. The above considerations, combined with the presumption of constitutionality with which all statutes should be reviewed leads this office to the opinion that the statutory qualification at issue is constitutional.
I hope this opinion sufficiently addresses your concerns. If I can be of further interest, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc