Dear Mr. Picard:
I am in receipt of your request for an Attorney General's opinion concerning the administration fee for the attendance of some students at the LEAP 21 summer remediation. You state the following facts:
 The State Board of Elementary and Secondary Education (SBESE), at its January 1999 meeting, adopted a High Stakes Testing Policy. This policy is in reference to state rules regarding pupil progression based on LEAP 21, the state's new criterion-referenced testing program. This policy states that, "A student may not be promoted to the 5th or 9th grade until he or she has scored at or above the Approaching Basic level in English and Mathematics on the 4th or 8th grade LEAP 21." In part, the policy further states that, "Local education agencies shall offer summer school and retest opportunities at no cost to students who score at the Unsatisfactory achievement level."
 At the December 1999 meeting, SBESE changed the student transfer policy contained in Bulletin 741, The Louisiana Handbook for School Administrators, as it pertains to nonpublic and home schooling students. The revised policy states:
 "Effective with the 2000-2001 school year, students in grades 5 and 9 transferring to the public school system from any in-state nonpublic school (state approved and unapproved), any home schooling program or any Louisiana resident transferring from any out-of-state school shall be required to pass the English language arts and Mathematics portions of the state-developed LEAP 21 placement test."
 After much discussion, SBESE adopted the actual LEAP 21 test given to public school students as the LEAP 21 placement test. Guidelines, which are awaiting advertisement, were adopted by SBESE to allow these students to participate in both the regular Spring (March) and Summer (July) administrations of LEAP 21. Nonpublic and home schooling students who wish to enter after the LEAP 21 summer retest has been administered will be given a form of The Iowa Tests. Students who wish to enter after February 15 will not be required to take a test to be placed in the 5th or 9th grade. The Guidelines are attached.
 One part of the Nonpublic Guidelines states: "Local school systems shall offer LEAP 21 summer remediation to nonpublic/home schooling 4th and 8th grade students who score at the Unsatisfactory achievement level." This policy parallels the policy regarding public school students. As stated above there is no charge for public school students to attend this summer remediation program. Neither public nor nonpublic students are required to attend summer school in order to participate in the summer LEAP 21 retest. However, attendance at the summer remediation program is required for both groups to be considered for an override of the high-stakes promotion policy or the appeals process. For each of these policies, certain rules apply, with the final recommendation being made by the School Building Level Committee (SBLC).
You indicate that at the February 24, 2000 SBESE meeting, the question of charging a fee to nonpublic and home schooling students for the attendance at the LEAP 21 summer remediation was discussed. BESE adopted a policy that a fee not to exceed $100 could be charged to nonpublic school students, home schooling students, or out-of-state students for the attendance of the LEAP 21 summer remediation pending the release of this opinion. In the event that the student enrolls in the public school system in the subsequent fall semester, BESE's policy allows the fee to be refunded. Specifically, the BESE seeks an opinion concerning the following:
 Can the parents of 4th and 8th grade nonpublic school students, home schooling students or Louisiana residents transferring from out-of-state schools who score at the Unsatisfactory achievement level on the spring administration of LEAP 21 be required to pay for attendance at the LEAP 21 summer remediation program offered by the local school system?
Article VIII, Section 3(A) of the Louisiana Constitution of 1974 provides:
. . . The State Board of Elementary and Secondary Education is created as a body corporate. It shall supervise and control the public elementary and secondary schools and special schools under its jurisdiction and shall have budgetary responsibility for all funds appropriated or allocated by the state for those schools, all as provided by law. The board shall have other powers, duties, and responsibilities as provided by this constitution or by law, but shall have no control over the business affairs of a parish or city school board or the selection or removal of its officers and employees.
The Louisiana Supreme Court in Aquillard v. Treen, 440 So.2d 704,708 (La. 1983) concluded that this constitutional provision is not self-executing. The Louisiana Supreme Court opined that BESE'S supervision and control of public elementary and secondary education is not unfettered, but is subject to the laws passed by the legislature.
The legislature set forth the general powers of BESE in LSA-R.S.17:6. This statute contains numerous grants or specific powers as well as the following general provision:
A. In the exercise of its supervision and control over the public elementary and secondary schools, vocational-technical and postsecondary vocational-technical schools and programs except in colleges and universities, and special schools under its jurisdiction, and in the exercise of its budgetary responsibility for all funds appropriated or allocated by the state for public elementary and secondary schools, vocational-technical and postsecondary vocational-technical programs and schools except colleges and universities, and special schools placed under its jurisdiction, the board shall have authority to:
 (15) Perform such other functions as are necessary to the supervision and control of those phases of education under its supervision and control.
As discussed in Attorney General Opinion No. 93-224, public school students may be charged a number of different fees. Certain fees are statutorily authorized. See LSA-R.S. 17:192(B) concerning breakfasts; LSA-R.S. 17:195 concerning lunches; LSA-R.S. 17:221.1
concerning drivers education. Certain fees have been found to have been permissible under LSA-R.S. 17:81, a statute describing the general powers of local school boards. See e.g. Attorney General Opinion No. 92-449 concerning methods to obtain payment of unpaid fees; Attorney General Opinion No. 81-1213 concerning transportation fees for extracurricular activities. See also Attorney General Opinion No. 95-365.
No statute specifically authorizes BESE to allow local districts to charge a fee to nonpublic and home schooling students for the attendance at the LEAP 21 summer remediation. However, this office has been unable to locate a statutory, regulatory or constitutional provision that would bar BESE from authorizing local districts to assess such a fee to students attending the LEAP 21 summer remediation program. It would appear that LSA-R. S. 17:6(15) could be interpreted to permit such BESE action, especially as local boards already possess the inherent power to assess such a fee under LSA-R.S. 17:81.
The Louisiana Constitution of 1974, Article 1, Section 3 provides the following concerning the right to individual dignity. It states:
 No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
Our Courts have held that Article I, Section 3 contains an equal protection or "individual dignity" clause, unlike that of any other state's constitution or the United States Constitution.Sibley v. Board of Supervisors of Louisiana State University,477 So.2d 1094 (La. 1985). Therein the Court recognized language which evidenced an intent to expand the scope of protection provided by the guarantee of equal protection under our constitution beyond that provided by the Fourteenth Amendment to the United States Constitution.
This office has opined that the state and its political subdivisions are accorded wide latitude in the regulation of their local economies under their police powers. City of New Orleans v.Dukes, 427 U.S. 297 (1976) and Attorney General Opinion No. 92-287. However, the application of this regulatory power must be balanced against, and limited by, the broad protective provisions of Article I, Section 3.
As stated in Sibley v. Board of Supervisors of Louisiana StateUniversity, supra:
 . . . Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved form a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.
In Attorney General Opinion No. 93-456, our office concluded that students may be charged reasonable fees from school to school and from classroom to classroom to cover the costs related to educational activities in furtherance of the goals of a particular course. Our office opined the following in regard to the constitutionality of such fees:
 With regard to the issue you raise as to the constitutionality of such fees, it is doubtful that some variation in the amount of fees from classroom to classroom and school to school would be found in and of itself violative of the educational guaranties of the state constitution or the equal protection guaranties of the state and federal constitutions. The United States Supreme Court has declared that education is not a "fundamental right" for purposes of constitutional analysis and, therefore, educational programs are subject only to a "mere rationality" test. San Antonio Independent School District v. Rodriquez, 93 S.Ct. 1278, 411 U.S. 1, 36 L.Ed.2d 16 (1973). In other words, there need only be a rational relationship between the questioned action and any legitimate state purpose. Pierre v. Administrator, Louisiana Office of Employment Security, 553 So.2d 442 (La. 1989).
 Therefore, the imposition of fees on students enrolled in certain courses should bear a rational relationship to the purposes of the state in educating its children in certain academic areas. . . .
In response to your request, the classification of individuals that is affected is nonpublic school students (in state and out-of-state), home schooling students, and out-of-state public school students transferring to a Louisiana public school for the attendance of the LEAP 21 summer remediation program. Applying the analysis of Article 1, Section 3 in Sibley, supra, to the present situation, the third classification of individuals must be examined which requires repudiation whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. The Leap 21 placement test is directly linked to the curriculum taught in the public school system. The purpose for this test is the proper placement of non-public school students in the public school system. Non-public school students are not required to take this test unless they desire to transfer to the public school system. The assessment of this fee to attend the LEAP 21 summer remediation program assists in defraying the cost of the program. Therefore, there is a rational basis for assessing a fee to participate in the LEAP 21 summer remediation program to students transferring to the public school system. As indicated in your policy, in the event that the student enrolls in the public school system in the subsequent fall semester, BESE's policy allows the fee to be refunded.
Therefore, the parents of 4th and 8th grade nonpublic school students, home schooling students or out-of-state public school students transferring to a Louisiana public school who score at the unsatisfactory achievement level on the spring administration LEAP 21 placement test can be required to pay for attendance at the LEAP 21 summer remediation program offered by the local school system.
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:_______________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc
a:\00-102.op